IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KELBER, LLC,

        **Plaintiff,**

v.            //     CIVIL ACTION NO. 1:15CV80
                              (Judge Keeley)

WVT, LLC, OAK HALL,

        **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]

Pending for consideration is the motion for partial summary judgment (dkt. no. 23) filed by the plaintiff, Kelber, LLC ("Kelber"). Also pending is the motion for summary judgment (dkt. no. 25) filed by the defendants, WVT, LLC ("WVT") and Oak Hall ("Hall") (collectively "defendants"). For the reasons that follow, the Court **GRANTS** Kelber's motion and **DENIES** the defendants' motion.

### I. BACKGROUND

In August 2011, Kelber purchased a rental property located at 796 Willey Street in Morgantown from Sunhersh, LLC ("Sunhersh"), for $384,000. Kelber, a Maryland limited liability company, obtained a mortgage with United Bank, which recorded the deed of trust in the Monongalia County Clerk's office in September 2011. Kelber then contracted with a management company to oversee and maintain the property, which was occupied by several residential tenants.

When the first installment of the 2012 property taxes became

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]

due in September 2012, the Monongalia County Sheriff sent the bill to Sunhersh instead of to Kelber. Sunhersh, however, never paid the taxes because it no longer owned the property; nor did it forward the bill to Kelber. Consequently, Kelber never received and paid the bill, and it became delinquent on the rental property's taxes.

In November 2013, the Sheriff sold the property at a tax lien sale, where WVT purchased it.[1] West Virginia Code § 11A-3-19 requires a tax lien purchaser such as WVT to prepare a list of all persons or entities entitled to redeem the property by paying all monies owed. In particular, the statute requires the purchaser to prepare its list "after October 31 of the year following the sheriff's sale, and on or before December 31 of the same year." W. Va. Code § 11A-3-19.

Rather than wait for the statutory time period, however, WVT prepared and submitted its list to the State Auditor ("Auditor") immediately after purchasing the property at the tax foreclosure sale.[2]  WVT requested that notice be sent to the names on the list

_____

[1]Defendant, Oak Hall, is the lone member of WVT, LLC.

[2]This is roughly one year prior to the opening of the statutory window in which to submit such a list. It is unclear what impact, if any, this would have had on the facts of this case, and, as it does not impact the Court's ruling here, thus, it need not be discussed further.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

not only by certified mail, return receipt requested, but simultaneously by regular mail to those listed, by mail to the West Virginia Secretary of State's office ("Secretary"), and by publication in the appropriate local newspaper (dkt. no. 25-3 at 4). WVT's list included the former owner of the property, Sunhersh, as well as United Bank, which was listed as a mortgage holder on the property.[3] Kelber also was listed, but at an address in Severna Park, Maryland, where it was no longer located; at the time the list was created, Kelber had in fact relocated to a different, unknown address. WVT's mailings to the Severna Park address were returned as "Not Known, Unable to Forward," "Not Deliverable," and "Unclaimed." As a result, Kelber never received notice of the sale, and never had an opportunity to redeem the property by paying the delinquent taxes.

Sometime after April 1, 2015, in accordance with state statute, the Auditor delivered a quitclaim deed to WVT. WVT immediately recorded the deed, and the County Clerk filed it in the

---

[3]Apparently, neither Sunhersh nor its managing member, Michael Castle, ever forwarded the redemption notices to Kelber because Sunhersh had sold the property to Kelber three years prior and was not responsible for the delinquent taxes (dkt. no. 24-2 at 3). Similarly, because Kelber had paid and satisfied the mortgage prior to United Bank's receipt of the redemption notice, the bank never forwarded it to Kelber (dkt. no. 24-4 at 2-3).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

record book on April 7, 2015. Two days later, April 9, 2015, WVT's agent, Hall, knocked on the door of the Willey Street property and asked a tenant for Kelber's phone number. After obtaining the number, Hall called Kelber to advise it that WVT now owned the property and would be collecting revenues from the tenants from that point on. Apparently, Hall also contacted Kelber's property manager on the same day. The property manager then began holding revenues from the property in escrow, and also retained outside counsel.

After being contacted by WVT, Kelber offered to pay the redemption amount pursuant to the state code, but WVT refused (dkt. nos. 24-4 at 4, 24-6 at 2). WVT then offered to return the property to Kelber for either $100,000 or "50 cents on the dollar" (dkt. nos. 24-4 at 4, 24-6 at 2). In addition, WVT posted a notice on the door of the property advising the tenants that they needed to "make contact with [WVT] so we can arrange to rent you the property. Should you fail to make contact with [WVT], [WVT] will be forced to take steps to evict you. Should you choose not to deal with [WVT] steps will be taken to evict you."

On April 27, 2015, Kelber filed a complaint in the Circuit Court of Monongalia County, asserting that the returned mailings

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

triggered additional duties on the part of WVT to attempt to ascertain Kelber's new address. Kelber also contended that WVT was required to send notice to the 796 Willey Street address of the subject property. As well, Kelber's complaint sought a preliminary injunction to set aside the tax-sale deed on the basis that WVT had failed to comply with W. Va. Code § 11A-3-22(d) by not using "due diligence" to locate and contact Kelber during the redemption period. It also asserted that, in its efforts to notify Kelber of the tax sale, WVT had performed a state function, and, by its failure to provide due process, had violated Kelber's constitutional rights. Finally, the complaint claimed that, by contacting its property manager and tenants, WVT had tortiously interfered with its contracts with those individuals.

WVT removed the case, with Kelber's motion for preliminary injunction pending, to this Court on May 14, 2015. Given the state of the pleadings on removal, the Court denied Kelber's motion for preliminary injunctive relief on May 20, 2015 (dkt. no. 14).

Thereafter, on October 2, 2015, Kelber moved for partial summary judgment, seeking to set aside the tax-sale deed and to obtain a declaration that it holds indefeasible title to the subject property, free and clear from any claims or interest of WVT

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

(dkt. no. 23 at 1). WVT followed with its own motion for summary judgment, seeking to dismiss the entire case with prejudice. Both motions are ripe for disposition. As explained below, the Court **GRANTS** Kelber's motion for partial summary judgment and **DENIES** the defendants' motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the

nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

Under West Virginia law, a property owner who is delinquent in paying property taxes exposes that property to public sale. See W. Va. Code § 11A-3-1. et seq. Prior to any sale, however, the county sheriff is required to publish a list of the county's delinquent lands and send a notice of delinquency by certified mail to the responsible taxpayers listed in the county land books. § 11A-3-2. The delinquent property owner may redeem at any point prior to the sale by tendering to the sheriff all of the taxes due, together with any interest and fees accrued. §§ 11A-3-4, 11A-2-18. Unredeemed properties are thereafter subject to the sheriff's public sale of tax liens against them. § 11A-3-5.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

If the highest bidder at the public sale pays all of the taxes due, and any interest and fees accrued, the "sheriff shall certify the real estate to the State Auditor for disposition." § 11A-3-8. The Auditor then provides notice to the purchaser outlining the requirements he or she must satisfy in order to secure a deed to the property. See § 11A-3-14. One of those requirements is that, "[a]t any time after October 31 of the year following the sheriff's sale, and on or before December 31 of the same year," the purchaser must "[p]repare a list of those to be served with notice to redeem and request the State Auditor to prepare and serve the notice." § 11A-3-19(a).

When serving the notice to redeem, the Auditor is required to provide the form notice provided in § 11A-3-21 to non-resident recipients by certified mail. § 11A-3-22. Furthermore, "[i]f the address of any person entitled to notice . . . is unknown to the purchaser and cannot be discovered by due diligence on the part of the purchaser, the notice shall be served by publication." Id. (emphasis added). Finally, "[i]f the real estate described in the notice is not redeemed within the time specified therein, . . . the deputy commissioner shall, upon the request of the purchaser, make and deliver to the person entitled thereto a quitclaim deed for

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

such real estate." § 11A-3-59.

Pursuant to § 11A-4-4(a), those entitled to notice to redeem, but who were not properly served with the requisite notice, may bring a civil action to set aside a tax deed within three years of its delivery to the grantee. However,

> [n]o title acquired pursuant to this article shall be set aside in the absence of a showing by clear and convincing evidence that the person who originally acquired such title failed to exercise <u>reasonably diligent efforts</u> to provide notice of his intention to acquire such title to the complaining party or his predecessors in title.

§ 11A-4-4(b) (emphasis added). Importantly, in suits seeking to set aside a tax sale deed, it is the tax sale grantee who bears the burden of proving full compliance with the statutory and due process notice requirements. <u>See</u> <u>Rebuild America, Inc. v. Davis</u>, 726 S.E.2d 396, 404 (W. Va. 2012); <u>Mason v. Smith</u>, 760 S.E.2d 487, 494 (W. Va. 2014) (citing <u>Rebuild America</u>).

To be clear, actual notice is not required before the government may deprive a person of their property. <u>See</u> <u>Jones v Flowers</u>, 547 U.S. 220, 226 (2006). Rather, the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Id.</u> (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306,

9

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

313 (1950)). The Supreme Court of Appeals of West Virginia has further defined these requirements as follows:

> There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice by mail or other means as certain to ensure actual notice.

Mason v. Smith, 760 S.E.2d 487, 488 (W. Va. 2014) (quoting Syl. pt. 1, Lilly v. Duke, 376 S.E.2d 122 (W. Va. 1988)).

The notifying party must utilize methods or means that anyone honestly seeking to actually effectuate the notice would reasonably employ. See Jones, 547 U.S. at 229 (quoting Mullane, 339 U.S. at 315 ("[W]hen notice is a person's due ... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.")).

There is a core question presented in this case: What constitutes reasonable due diligence by someone actually desirous of providing notice when the address of the party to be noticed is unknown? Over the last several decades, opinions on this issue have evolved, gradually establishing more due process protections for the delinquent property owner. In West Virginia, the Supreme Court of Appeals has consistently expanded the minimum efforts required to meet the reasonable due diligence threshold. See Mingo Cty.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

Redevelopment Auth. v. Green, 534 S.E.2d 40, 45 (W. Va. 2000)

(describing evolution of minimum notice requirements).

As an example of this evolution, the 1967 version of the tax

sale statute, W. Va. Code § 11A-2-13 (1967), merely required that

a list of delinquent properties be posted on the county courthouse

door and published as a legal advertisement in the newspaper. See

Lilly, 1376 S.E.2d at 125 n. 2, n. 3. In Lilly, West Virginia's

highest court invalidated that version of the statute[4] because it

allowed for the sale of delinquent properties without "personal

notice to affected owners and others having an interest in the

property."[5] Id. at 125. Lilly articulated the minimum standard for

---

[4]In 1983 and 1985, during the pendency of Lilly, West Virginia
amended W. Va. Code § 11A-3-2 to require personal notice to the
property interest holder. See Lilly, 376 S.E.2d at 125.

[5]The Court relied heavily on, and fully complied with, the
opinion of the Supreme Court of the United States in Mennonite Bd.
of Missions v. Adams, 462 U.S. 791 (1983). Mennonite held that
"constructive notice to a mortgagee violated due process where the
mortgagee could reasonably be identified from public records:

> When the mortgagee is identified in a mortgage that is
> publicly recorded, constructive notice by publication
> must be supplemented by notice mailed to the mortgagee's
> last known available address, or by personal service. But
> unless the mortgagee is not reasonably identifiable,
> constructive notice alone does not satisfy the mandate of
> Mullane."

Lilly, 376 S.E.2d at 124 (quoting Mennonite, 462 U.S. at 798).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

notice to a property interest holder of a pending tax sale as
follows:

> There are certain constitutional due process requirements
> for notice of a tax sale of real property. Where a party
> having an interest in the property can reasonably be
> identified from public records or otherwise, due process
> requires that such party be provided notice by mail or
> other means as certain to ensure actual notice.

Id. at Syl. pt. 1.

Notably, "West Virginia's statutory notice requirements
parallel the requirements of the United States Constitution."
Plemons v. Gale, 396 F.3d 569, 572 (4th Cir. 2005) ("Plemons II").
Accordingly, the Court will draw on both bodies of law to resolve
the issues in this case. See Button v. Chumney, 2014 WL 2931901, at
*6 (N.D.W. Va. June 27, 2014).

**IV. DISCUSSION**

No material facts are in dispute.[6] The parties agree that
Kelber was a party to be noticed and that its address of record was

---

[6]WVT argues in its opposition to Kelber's motion for summary
judgment that there are genuine issues of material fact in dispute,
and then proceeds to list the issues. But this list contains mere
disagreements with Kelber's legal arguments, and assertions of
WVT's own legal conclusions. There are no claims that some fact,
such as the actions by either party, or the results of those
actions, did not occur in the way claimed by the opposing party.
Indeed, WVT's own motion for summary judgment notes that Kelber
"has failed to establish any genuine issue of material fact for a
jury to decide" (dkt. no. 25-3 at 1). Notably, nor has WVT.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

no longer valid. Further, the actions taken by WVT in its attempt to comply with the statutory notice requirements, as well as the results of those efforts, are undisputed. The sole question is whether WVT was reasonably diligent in fulfilling its statutory and constitutional due process duty to provide Kelber with adequate notice of its right to redeem. The Court concludes that it was not.

Challenges to tax sales of private property can generally be divided into two distinct areas of inquiry: (1) whether the state, or, as in this case, a private party that has been statutorily assigned the duty to provide notice to redeem,[7] has reasonably identified all parties with an interest in the subject property; or (2) whether the government, or its statutorily substituted party, has satisfied the due process requirement of providing adequate notice to all of those identified parties. Here, there is no question Kelber was a record party of interest properly identified on the list WVT prepared for the Auditor. Consequently, the Court

---

[7]See Plemons v. Gale, 298 F.Supp.2d 380, 388 (S.D.W.Va. Jan. 13, 2004) ("Plemons I"), vacated 396 F.3d 569, 570 (4th Cir. 2005), remanded to 382 F.Supp.2d 826 (S.D.W.Va. July 27, 2005) ("Plemons III") ("Under West Virginia law, the tax lien purchaser has the duty to give notice . . . ."); see also Huggins v. Prof'l Land Res., Inc., 2013 WL 431770 (N.D.W.Va. Jan. 25, 2013) (noting that the statutory scheme "assigns to a private party the State's Fourteenth Amendment obligation to notify property owners of their right to redeem their property interest").

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

need only determine whether WVT fully complied with the due process requirement to provide adequate notice to Kelber.

The Supreme Court of Appeals of West Virginia recently addressed similar facts in Mason v. Smith, 760 S.E.2d 487 (W. Va. 2014). There, the tax sale purchaser did not attempt personal service on the record owners of a delinquent property "in the manner provided for commencing a civil action," nor did they attempt notice by publication. Id. at 493. Instead, the purchaser opted to send notice by certified mail to the record owners, and also to a bank that held a mortgage on the property. Id. at 489-90. The certified mail receipts showed that, while the bank received notice, the notices to the three record owners were returned as undelivered. Id. at 490. Importantly, the returned notices were not marked "refused," but rather "return to sender—not deliverable as addressed—unable to forward" or "return to sender—unclaimed—unable to forward." Id.

Mason held that certified mail returned and marked as "undeliverable as addressed," or "unclaimed," did not provide adequate notice to the property owner of its right to redeem. Id. at 494. It noted that, after the unsuccessful initial mailing, the tax sale purchaser had failed to take any additional steps to

effectuate service on the owners, despite the fact that the three property owners' "correct addresses were reasonably ascertainable and could have been confirmed through the exercise of due diligence." Id. at 494.

Importantly, prior to Mason, in Jones v. Flowers, the Supreme Court of the United States held that when mail is returned unclaimed, the due process requirement of adequate notice has not been satisfied. 547 U.S. 220, 225 (2005). In Jones, the Arkansas Commissioner of Lands sent notice by certified mail to a land owner informing him of his tax delinquency and his right to redeem. Id. at 223. The mailings were returned, marked "unclaimed." Id. at 223-24. Just prior to the tax lien sale, the Commissioner published a legal notice of the sale in the newspaper. Id. at 224. After selling the property to the highest bidder, the Commissioner again mailed notice to the delinquent property owner, informing him that, unless he redeemed by paying the past due taxes and fees, the property would be transferred to the lien holder. Id. at 224.

Based on these facts, the Supreme Court recognized that, although its precedent allowed for certified mail to satisfy the due process requirement, it had never addressed directly "whether due process entails further responsibility when the government

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

becomes aware prior to the taking that its attempt at notice has failed." Id. at 227. Noting that a majority of the federal circuit courts of appeals and state supreme courts that had addressed the issue had "decided that when the government learns its attempt at notice has failed, due process requires the government to do something more before real property may be sold in a tax sale," id. at 227-28 (collecting cases), the Court observed:

> We do not think that a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified letter sent to the owner is returned unclaimed. If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one "desirous of actually informing" the owners would simply shrug his shoulders as the letters disappeared and say "I tried." Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman.

Id. at 229. Accordingly, "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Id. at 225.

In the case at bar, it is undisputed that the notices sent to Kelber by certified mail were returned as undeliverable. There is

also no dispute that, at the time WVT directed the Auditor to send notice to Kelber by certified mail, it also directed the Auditor to provide notice by regular mail, by publication in the local newspaper, and by service on the Secretary. Finally, it is undisputed that, once the certified mailing was returned as undeliverable, WVT took no further steps to notify Kelber. In actuality, WVT not only failed to take further steps after the unsuccessful delivery, it also demonstrated no desire whatsoever to ascertain the results of its notification efforts. Essentially, it closed its eyes and hoped for the best.

Nevertheless, WVT contends that it fully complied with the requirements of due process, arguing that, regardless of the failed delivery of the certified mailings, it had no duty to take any further steps. The Court now turns to these contentions.

**A.    WVT's Lack of Actual Knowledge that the Certified Mail was Returned as Undeliverable Does not Obviate its Obligation to Take Further Action**

Because it had no knowledge that its certified mailings were returned to the Auditor as undeliverable, WVT argues that it had no obligation to take any additional steps. In support, it relies on the holdings in <u>Jones</u> and <u>Plemons</u>, claiming those decisions excused it from any obligation to take further steps towards providing

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]

notice, barring its actual awareness of the unsuccessful initial attempt. See Jones, 547 U.S. at 227 ("[W]hen the government learns its attempt at notice has failed . . . ."[8]) (emphasis added); Plemons II, 396 F.3d at 573 ("When a party required to give notice knows that a mailed notice has, for some reason, failed . . . ."). According to WVT, this language indicates that the duty to take additional steps is only triggered by actual knowledge of the failed notice attempt.

The issue of actual knowledge was not specifically addressed by the courts in either Jones or Plemons. In both of those cases, the notifying party conceded its awareness of the failed notice attempt. Nevertheless, to WVT's point, the Court finds that it would be antithetical to the clearly established duty to provide adequate notice if the state or other responsible party could evade that duty simply by sending a certified mailing and avoid,

_____

[8]To be clear, the quoted language from Jones comes from the Court's discussion of what other courts have decided, while its conclusion does not explicitly demand knowledge:

We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.

Jones, 547 U.S. at 225.

18

purposefully or otherwise, learning of its outcome. The very essence of requiring the "return receipt requested" option with certified mail indicates that the sending party desires confirmation of its receipt. A sender cannot know of a prompt return of undeliverable mail if allowed to turn a blind eye. Moreover, allowing a party to exercise willful blindness to the outcome of the certified mailing would ignore the reasoning of courts that have required a party on notice of a failed attempt to take additional steps.[9]

This Court declines WVT's invitation to validate the practice of turning a blind eye to the outcome of notice by certified mail. It is untenable to hold that the duty to provide notice does not include a duty to determine whether a certified mailing was successful. That is after all the very purpose of requiring a return receipt. Such a holding would be particularly detrimental in a case such as this, where the state will receive the returned undeliverable mail, thus allowing the notifying party to shield itself through purposeful ignorance from having to take any

---

[9]See Plemons II, 396 F.3d at 575-76 (collecting cases holding that additional steps are required once the notice is returned as undeliverable).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

additional reasonable steps to provide notice.[10]

In <u>Plemons III</u>, Judge Goodwin recognized the inherent conflict of interest present in a system that places the duty to provide notice on the very party that stands to profit most if the notice is unsuccessful. <u>See</u> 382 F.Supp.2d 826, 830 (S.D.W.Va. July 27, 2005). "This conflict of interest makes it imperative that courts strictly scrutinize the efforts of a tax lien purchaser to ensure that they are 'such as one desirous of actually informing the absentee' might reasonably adopt." <u>Id.</u> (quoting <u>Mullane</u>, 339 U.S. at 315).

It can hardly be considered a reasonably diligent effort when, as here, a party charged with providing notice fails to inquire as to the results of the certified mailing. Whether a party knows, or should reasonably know, that its notice efforts have initially failed is an appropriate inquiry in a case such as this one. Utilizing that benchmark, the Court has no difficulty in concluding

---

[10]In fact, the State had instituted an online system by which purchasers could track the status of the certified mail, and it expected that the purchasers would do such. <u>See</u> Dkt. No. 24-8 at 11-18. WVT admits that it often utilizes the system to track roughly 300 properties, but for some unknown reason, it allegedly failed to check the mailings for the Kelber property. <u>See</u> Dkt. No. 24 at 28-29 (citing preliminary injunction hearing testimony of Senior Deputy State Auditor).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

that, at a minimum, WVT had a duty to inquire as to the results of the certified mailing, and therefore should have reasonably known of the unsuccessful delivery.

**B.    WVT Failed to Take Sufficient Additional Steps Once the Certified Mail was Returned as Undeliverable**

WVT next argues that it had already undertaken all additional steps required when, at the time of the certified mailing, it preemptively directed the Auditor to send notice by regular mail, by service on the Secretary, and by publication in the local newspaper. Kelber contends that such "concurrent initial efforts do not equate to additional or follow-up efforts," as required once notice has been returned as undeliverable (dkt. no. 30 at 5). Essentially, Kelber argues that a multi-step process is involved; that is, once the party tasked with notice knows that the mailing has been unsuccessful, it then must take additional steps to ascertain a correct address. Only after the initial effort fails, as well as all subsequent reasonable efforts to discover a correct address, should the party then resort to the less likely methods of regular mail, service through the Secretary, or publication in the newspaper.

The holdings in Plemons II, Jones, and Mason underscore that standard methods of attempting notice do not suffice when the

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

sender is on notice that the certified mail has been returned as undeliverable. In such an instance, these additional attempts at notice may only suffice when they are utilized after the initial effort has failed. Only then, armed with any information garnered from the failed attempt, can the notifying party reasonably calculate whether those methods might provide adequate notice of the pending tax lien sale. See Plemons II, 396 F.3d at 575, where the court observed:

> [A]dopting the rule that prompt return of mailed notice triggers a duty to make reasonable follow-up efforts would seem to best comport with the instruction in Mullane that due process requires efforts "reasonably calculated" to actually "apprise interested parties" of the possible deprivation; that is, notice consistent with that of "one desirous of actually informing the absentee," rather than efforts that are but a "mere gesture."

(quoting Mullane, 339 U.S. at 314-15).

Similarly, in Jones, the Supreme Court held that "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." 547 U.S. at 230. It is logical that further obligations would be triggered only subsequent to knowledge of the failed certified mailing. Without such knowledge, the notifying party cannot properly evaluate whether

regular mail, notice to the Secretary, or publication are reasonably calculated to provide notice under the circumstances. In other words, those methods cannot be characterized as further efforts if they are exhausted beforehand, without knowledge that the record address may be invalid.

It makes sense that any such additional efforts would be steps at resolving the undeliverability issue, not just further attempts directed at what then is most likely known to be an invalid address. Knowledge that a certified mailing has been returned as undeliverable puts the sender on notice that it is highly probable that the recipient no longer resides at that address. See Plemons II, 396 F.3d at 575 ("The return of the certified notice marked 'unclaimed' should have been a red flag for some further action."). Armed with that knowledge, the sender can presume that a regular mailing likely, although not absolutely, will face the same fate.

Moreover, it is reasonable for the sender to question whether the incorrect address in the county records is the same address on file with the Secretary, or even whether the property owner has registered with the Secretary at all. Certainly, a reasonable additional step would be to contact the Secretary by telephone or website to ascertain whether there is an address on file and, if

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

so, whether it matches the county record address.

Finally, WVT argues that publication of the notice in the newspaper ultimately satisfied its due process obligation. This argument fails, however, in the face of WVT's constructive knowledge that the certified mailing was returned as undeliverable, and its failure to undertake any additional efforts to ascertain the property owner's valid address.

Notice by publication is a "last ditch" attempt, to be utilized when all else fails:

> If the address of a person entitled to notice, whether a resident or nonresident of this state, is unknown to the purchaser <u>and cannot be discovered by due diligence</u> on the part of the purchaser, the notice shall be served by publication as a Class III-0 legal advertisement . . . and the publication area for the publication shall be the county in which the real estate is located. <u>If</u> service by publication is <u>necessary</u>, publication shall be commenced . . . .

§ 11A-3-22 (emphasis added). The statute is clear. Only after duly diligent efforts to discover a valid address have failed shall the party tasked with notice be allowed to satisfy due process by publication. Indeed, pursuant to <u>Jones</u>, service by publication is akin to a "hail mary": "Several decades ago, this Court observed that '[c]hance alone' brings a person's attention to 'an advertisement in small type inserted in the back pages of a

newspaper,' and that notice by publication is adequate only where 'it is not reasonably possible or practicable to give more adequate warning.'" Jones, 547 U.S. at 237 (quoting Mullane, 339 U.S. at 315, 317); see also Mennonite, 462 U.S. at 799 ("Neither notice by publication and posting, nor mailed notice to the property owner, are means 'such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it.'"). This observation is even more appropriate when the property owner is known to live out of state.

Accordingly, the Court concludes that due process required WVT to exercise due diligence in its duty to provide notice, including taking further reasonable steps to ascertain Kelber's current address once the certified mailing was returned as undeliverable. This it failed to do. Therefore, based on its failure to undertake any additional efforts, its publication of the notice does not satisfy the due process requirements established in Plemons II, Jones, and Mason.

**C.   WVT Could Have Undertaken Reasonably Diligent Efforts at Notification that were not Extraordinary**

WVT asserts that it was reasonably diligent when it searched the public records prior to sending notice by certified mail, and that, in any case, Kelber's current address could not have been

ascertained from them (dkt. no. 25-3 at 17). Moreover, it claims that, by contemporaneously providing notice by regular mail, service on the Secretary, and publication in the newspaper, it undertook all the efforts required by due process. According to WVT, this was more notice than had been provided to either of the property owners in Jones or Plemons (dkt. no. 25-3 at 18-19). Finally, WVT relies on Plemons II for the proposition that a party "need not undertake extraordinary efforts to discover . . . whereabouts . . . not in the public record." 396 F.3d at 574.

This, however, is only a partial reading of the court's holding in Plemons II. The entirety of the passage quoted by WVT reads:

> Although a party required to provide notice need not "undertake extraordinary efforts to discover . . . whereabouts . . . not in the public record," it must use "reasonably diligent efforts" to discover addresses that are reasonably ascertainable.

Plemons II, 396 F.3d at 574 (quoting Mennonite, 462 U.S. at 798 n. 4. Thus, efforts clearly are not extraordinary simply because they are beyond a search of the public record. Rather, once a party is on notice that the recipient's address is no longer valid, it must undertake a reasonably diligent effort to acquire a valid address, if ascertainable, so long as that effort is not extraordinary. See

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

Plemons II, 396 F.3d at 575-76 (collecting cases indicating that, once a mailing is returned as undeliverable, the sender is obligated to make an effort to ascertain the correct address[11]). A review, or re-review, of all available public records is not the end of the reasonableness inquiry, but rather "the very least" of what may be required. Id. at 577.

Courts have been reticent to define the contours of "extraordinary efforts." Nevertheless, "'all the circumstances' of a case, including its 'practicalities and peculiarities,' must be considered in determining the constitutional sufficiency of notice." Id. at 574 (quoting Mullane, 339 U.S. at 314). In Plemons I, the district court suggested several ways in which Plemons's correct address might have been reasonably ascertained, including consulting the phonebook, inquiring of the tenants at the subject property, and contacting the mortgagee bank. See 298 F. Supp. 2d 380, 389 (S.D.W. Va. Jan. 13, 2004). On review, the Fourth Circuit

---

[11]"As all of these cases recognize, initial reasonable efforts to mail notice to one threatened with loss of property will normally satisfy the requirements of due process. However, when prompt return of an initial mailing makes clear that the original effort at notice has failed, the party charged with notice must make reasonable efforts to learn the correct address before constructive notice will be deemed sufficient." Plemons II, 396 F.3d at 576.

held that such efforts were not compelled in that particular case. Plemons II, 396 F.3d at 577. Although recognizing that checking the phonebook might be reasonable in some cases, it concluded that such an effort would have been futile because the telephone number and address listed for Plemons were no longer valid. Id. The circuit court also dismissed the idea that contacting the tenants would have been reasonable because mailings addressed to the occupant had already been returned as undeliverable. Id. Further, it noted that a property owner and mortgagee are not in privity and "under normal circumstances, one cannot be expected to communicate notice of an impending tax sale to the other." Id. (citing Mennonite, 462 U.S. at 799). Despite these conclusions, it is clear from the Fourth Circuit's opinion that, in an appropriate case, such methods could be considered reasonably diligent efforts.

Notably, in Plemons II the Fourth Circuit remanded the case to the district court expressly for the purpose of determining "what efforts, if any, [the purchaser] made to search public documents, or whether Plemons' proper address would have been ascertainable from such a search." Id. at 578. On remand, Judge Goodwin determined that, although the purchaser had failed to make any further efforts to locate Plemons, a subsequent search of the

public records would not have revealed her correct address. He therefore concluded that the deed should not be set aside. Plemons III, 382 F.Supp.2d at 828.

Judge Goodwin nevertheless expressed puzzlement with the inquiries requested by the Fourth Circuit. Questioning how a re-examination of the same public records as originally searched could possibly satisfy due process, he noted that such a futile re-examination would be the kind of "mere gesture" disapproved in Mullane. Id. at 829 ("As the Supreme Court noted in Mullane, 'when notice is a person's due, process which is a mere gesture is not due process.'" (quoting Mullane, 339 U.S. at 315)). Anticipating the outcome in Jones, he posited that the "only relevant inquiry is to ask what process would be undertaken by a reasonable person under the specific circumstances of the case." Id.

In Jones, the Supreme Court confronted the question of what constituted reasonable diligence when a mailing is promptly returned as undeliverable. See 547 U.S. 220. After certified mail to Jones was returned as undeliverable, the State of Arkansas took no further action; two years later, after sending a second round of certified mail to the invalid address and publishing an advertisement in the newspaper, it sold the property at public

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

auction. In the view of the Supreme Court, "[d]eciding to take no further action is not what someone 'desirous of actually informing' [the property owner] would do; such a person would take further reasonable steps if any were available." Id. at 230.

Jones argued that the state should have searched for his address in the "phonebook and other government records such as income tax rolls." Id. at 235-36. Although the Supreme Court declined to mandate such an open-ended search of all records, id. at 236, it did note several other reasonable steps that Arkansas could have undertaken, including posting notice on the front door of the residence, or addressing otherwise undeliverable mail to "occupant."[12] Id. at 235. Indeed, it reasoned that an open-ended search of government records "imposes burdens on the State significantly greater than the several relatively easy options outlined above," including simply posting notice on the front door. Id.

---

[12]The parties go to great lengths to argue whether mailing to the physical address could have been accomplished because of a technically incorrect address, i.e., 796 Willey Street rather than 796A or 796B Willey Street. Whether such an effort would have been successful or futile is of no import to the outcome here, however, as WVT never even attempted to send mail to "occupant," an effort that might have informed them of the mailing address discrepancy and allowed them to correct for it.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

In dismissing Arkansas's complaints that such efforts were overly burdensome, the Court noted that the state's current statute mandated that, in the absence of proof that the property owner has received notice by certified mail, the state was required to provide actual notice through personal service. Id. at 236 (citing Ark. Stat. § 26-37-301(e)). Similarly, in West Virginia, civil lawsuits may be initiated by actual notice through personal service. Concomitantly, posting notice on the property, knocking on the front door, or addressing mail to "occupant" cannot be considered overly burdensome when the method of service mandated by West Virginia law to initiate all civil lawsuits is personal service. See W. Va. R. Civ. P. 4.

Considering the current state of the law in West Virginia, it is notable that, in Mason, the Supreme Court of Appeals of West Virginia set aside a tax deed after certified mail sent to the property owner was returned as undeliverable, where the purchaser had made no further efforts at notification. See 760 S.E.2d 487, 494 (W.Va. 2014). The court noted that, although the record addresses for the property owners were no longer valid, their "correct addresses were reasonably ascertainable and could have been confirmed through the exercise of due diligence." Id. at 494.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

Ultimately, the court found that the purchaser had "failed to take a single additional step to attempt to notify the [property owner]." Id. at 494.

WVT purports to find support for its contention that it was not required to mail notice to the subject property address in this Court's decision in Button, where notice to the record owner, Ms. Mills, was returned as undeliverable. See 2014 WL 2931901 (N.D.W.Va. 2014). Notably, although it may have been possible for the tax lien purchaser to have reasonably ascertained Mills's current address from a search of the county records, any mailing to that address ultimately would have been futile because she had died. Id. Accordingly, this Court held that, under the circumstances, all due process requirements had been met. Seizing on this holding, WVT asserts that it also was not required to mail notice to the subject property address of record, 796 Willey Street, because mailing there would have been futile.[13]

-----

[13]WVT provided an affidavit of Troy Rickles, Officer in Charge of the Morgantown Post Office. Dkt. No. 25-1. Mr. Rickles swore that 796 Willey Street it not a valid mailing address and any mail sent there would have been returned as undeliverable. Id. at 1. The correct mailing addresses were 796 Willey Street Apartment A and 796 Willey Street Apartment B. Id. According to Mr. Rickles, any mail addressed to Kelber LLC at either of those addresses would also have been returned as undeliverable, however, because it is not listed as the occupant of those residences. Id. at 2.

Button, however, is factually distinguishable from the case at bar in several important respects. First, it dealt with the question of providing notice to Button's predecessor in interest, Ms. Mills. Button had acquired the property interest through Ms. Mill's will, but she never recorded it with the county. Having never been an owner of record, neither Button (nor her address) could have been ascertained from a reasonable search of the county records. Perhaps of greater relevance to the issue here, however, is the fact that Button dealt with mineral rights that were subject to a tax lien sale, and the property under which those minerals were situated was unimproved, uninhabited land. Id. Posting notice on the minerals, or knocking on the front door of a residence on the property above them, were not options available to the tax lien purchaser.

Nevertheless, Button recognized that "[w]hether a tax lien purchaser performs his or her duties in a reasonably diligent manner, however, can be examined only 'under all the circumstances' of a given case." Id. at *6 (citing Mullane, 339 U.S. at 314). The circumstances in the instant case are distinguishable from those in Button. Once it should reasonably have known that the certified mail was returned as undeliverable, and that, more likely than not,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

the address it had used for Kelber was no longer valid, WVT made no further effort to ascertain Kelber's current address. While there is no dispute that a re-examination of the county records would have been futile in this regard, WVT did have a multitude of non-extraordinary means available to it to attempt to ascertain that address. A party actually desirous of notifying Kelber could have called the bank that formerly held the mortgage on the property and simply asked whether it had a contact phone number or address for Kelber.[14] As WVT was aware that Kelber was a Maryland LLC, it also could have visited the Maryland Secretary of State's website in pursuit of a current address. Neither of these efforts would have required even leaving the office, and certainly were not extraordinary.

Perhaps the simplest, most efficient, and most direct way of providing notice to Kelber, however, would have been to do exactly what WVT did once it had acquired the deed to the property — go to the property and knock on the door (or post notice). See Jones, 547 U.S. at 236-37 (noting that "rather than taking relatively easy

---

[14]While it is true that the bank may not have given such information to WVT, one cannot know because no one asked. Moreover, the bank may have forwarded the request to Kelber as a service to its former customer, but again, we cannot know this because it was not attempted.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

additional steps to effect notice, [including posting at the property,] the State undertook the burden and expense of purchasing a newspaper advertisement, conducting an auction, and then negotiating a private sale of the property"). WVT was well aware that the property at issue was a rental property with multiple tenants, and, potentially, a property manager, and it should have reasonably surmised that it could ascertain Kelber's contact information simply by visiting the property. See Plemons II, 396 F.3d at 573 ("Only a method that is reasonable, taking into account 'the practicalities and peculiarities of the case,' will be adequate." (quoting Mullane, 339 U.S. at 314-15)). Posting at the property would also have been reasonable and no more burdensome than the personal service outlined as one method of satisfying the statute.

Such efforts are not extraordinary. In fact, they are so ordinary that almost immediately after it received the deed WVT was able to speak directly with the property manager and Kelber itself when it wanted to collect the rents and make an offer for 50 cents on the dollar. WVT also posted notice two days after recording the deed, when it sought to inform the tenants that it would now be collecting the rents.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

In light of the circumstances, it is beyond debate that WVT could have taken additional steps "reasonably calculated, under all the circumstances, to apprise [Kelber] of the pendency of the action and afford them an opportunity to present their objections." Jones, 547 U.S. at 226 (internal quotation omitted). While it may be inappropriate for a court to prescribe exactly what steps must be used in any given case, the additional steps available to WVT here clearly were not extraordinary. Rather, they provided reasonable methods of notification that someone actually desirous of notifying Kelber might have employed under the circumstances. WVT, however, merely sat back and waited for the redemption period to expire.

**D.   Kelber's Own Failure to Pay its Taxes and Update its Address with the State Does Not Excuse the Due Process Requirement for Adequate Notice**

WVT avers that Kelber failed to pay its property taxes, failed to keep its address current with the County Clerk or Sheriff, and failed to keep its address updated with the Auditor. It contends that these facts constitute a lack of "reasonable diligence," thus making Kelber "solely responsible" for the tax sale transfer. These arguments are unavailing.

In Jones, the Supreme Court specifically addressed whether a

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

property owner who had received a tax bill and then failed to pay the taxes owed was on inquiry-notice that the property was subject to a tax sale. It held that "the common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." 547 U.S. at 231-32 (citing Mennonite, 462 U.S. at 800).

Jones also summarily dispatched the argument that the failure of property owners to update their addresses, even in the face of a statutory requirement to do so, relieved the state of its constitutional obligation to provide adequate notice. Id. at 232. While acknowledging that a statute requiring a property owner to update its address did support the contention that mailing a certified letter to the record address was a reasonably calculated method of reaching the property owner, the Court concluded that a property owner's failure to update its record address did not excuse the obligation of the State to take additional steps once notice is promptly returned as unclaimed or undeliverable. Id. at 232.

**E.  WVT's Mailing of Notice to the West Virginia Secretary of State's Office was not Adequate Notice to Kelber**

WVT's final argument is that Kelber was statutorily required

37

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

to register with the West Virginia Secretary of State's office to acquire a business certificate. By Kelber's failure to do so, WVT contends that, pursuant to W. Va. Code § 31D-15-1501(e), Kelber is presumed to have appointed the Secretary as its attorney-in-fact. Kelber counters that it is not subject to that portion of the Code, which applies to West Virginia corporations, because it is a limited liability company ("LLC") licensed in Maryland. Kelber, however, is subject to the Uniform Limited Liability Company Act ("LLC Act"), codified at W. Va. Code § 31B-10-101, <u>et seq.</u> That statute contains a substantially similar provision appointing the Secretary as attorney-in-fact for unregistered foreign LLCs. <u>See</u> W. VA. Code § 31B-10-1008.

The Court need not resolve this dispute, inasmuch as both of these statutes must yield to constitutional due process requirements. Merely sending notice to the Secretary, even if considered Kelber's de facto agent, does not comport with the due process requirements under the circumstances of this case. The holding in <u>Jones</u> clearly dispelled any notion that one's failure to comply with laws requiring payment of property tax, or failure to update one's address as statutorily required, somehow abrogated the State's obligation to provide adequate notice. <u>See</u> 547 U.S. at

38

231-32. Similarly, a statute automatically appointing the Secretary as attorney-in-fact for an unregistered LLC in no way mitigates the State's obligation to provide a property owner with adequate notice of its right to redeem.[15]

This view is in keeping with the legislative intent of West Virginia's statutory scheme governing tax lien sales, which recognizes "the rights of owners of real property to adequate notice and an opportunity for redemption before they are divested of their interests in real property for failure to pay taxes" W. Va. Code § 11A-3-1. It also aligns with the clear trend of the majority of courts mandating that reasonable efforts be undertaken to provide actual notice to the property owner. See Mingo Cty., 534 S.E.2d at 45; see also Dkt. No. 16 at 100 ("I believe that . . . the West Virginia Supreme Court is moving in th[e] direction [of actual notice]. I believe [Jones] has already put the Federal Courts there." (testimony of West Virginia University College of Law, Dean Emeritus, John W. Fisher, II, during preliminary injunction hearing on May 20, 2015)).

---

[15]Indeed, one might argue that, if a tax lien purchaser knows that a foreign LLC has not registered, he may choose only to mail notice to the Secretary, with full knowledge of the futility of reaching the owner, and simply rely on the Secretary's statutory appointment as agent to conclude that notice has been perfected.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

### V. CONCLUSION

For the reasons discussed, the Court concludes that WVT failed to provide Kelber with adequate notice of its right to redeem the subject property. Consequently, it **GRANTS** Kelber's motion for partial summary judgment and **DENIES** WVT's motion for summary judgment.

The Court is cognizant that, pursuant to W. Va. Code § 11A-3-1, et seq., before the deed may be set aside, Kelber is required to present to WVT the full redemption amount, together with any additional taxes paid by WVT and any other statutorily mandated costs. Moreover, Kelber is entitled to any rents collected since the deed was recorded, less any expenses paid by WVT. Accordingly, the Court **ORDERS** the parties each to submit an accounting of the amounts owed no later than **Monday, October 31, 2016**, following which it will schedule a hearing to address setting aside the tax sale deed and Kelber's requested declaration that it is vested with indefeasible title to the subject property, free and clear from all claims and interest of WVT.

It is so **ORDERED.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 23] AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 30, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE